BARRY J. PORTMAN
Federal Public Defender
ANGELA M. HANSEN
Assistant Federal Public Defender
555 – 12th Street, Suite 650
Oakland, CA 94607-3627
510-637-3500 (phone)
510-637-3507 (fax)

Counsel for Defendant BAEZ-BAEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SALVADOR BAEZ-BAEZ, ) <br> ) <br> Defendant. ) <br> _____) | No. 04-40183-CW <br> No. 08-00063-CW <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Date: June 25, 2008 <br> Time: 2:00 p.m. |

  Salvador Baez-Baez, though his attorney, Assistant Federal Public Defender Angela M. Hansen, submits this sentencing memorandum to respectfully request that the Court sentence him to 24 months in custody for the instant offense and six months in custody for his supervised release violation – for a total sentence of 30 months. Thirty months is a reasonable sentence, it comports with the terms of the plea agreement and is sufficient but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a).

  Mr. Baez entered into a Rule 11(c)(1)(C) plea agreement with the government in which the parties agreed to a sentencing range of 30-41 months. *See* Plea Agreement ¶ 8. If the Court accepts Mr. Baez's plea agreement, he cannot be sentenced outside of this agreed-upon range. The actual sentencing range for the instant offense is 24-30 months. The agreed-upon range is higher than this

1  range because the parties reached an agreement that takes into account the fact that Mr. Baez was on
2  supervised release for illegal reentry at the time he returned to the United States. PSR ¶ 3.
3  Therefore, a sentence at the low-end of the agreed-upon range (30 months), which is six months
4  higher than the low-end of the actual range, would provide a significant punishment for Mr. Baez on
5  both cases.
6       It is not disputed that Mr. Baez is at an offense level 10 and in Category VI criminal history,
7  for an adjusted guideline range of 24-20 months for the new illegal reentry charge. PSR ¶ 62. While
8  Mr. Baez has a significant criminal background, most of his prior offenses are misdemeanor
9  convictions and he has no violent or aggravated felonies. In fact, his only pre-deportation felony
10 conviction is the illegal reentry conviction he sustained in this Court in 2005. PSR ¶¶ 26-34. As a
11 result, he does not receive the 16-level adjustment under Guideline § 2L1.2 as most other defendants
12 in Mr. Baez's situation usually do. PSR ¶ 15.
13      Mr. Baez admittedly lost the Court's trust in returning to this country while he was on federal
14 supervision. But he returned to this country to work. *See* Exhibit A, June 5, 2008 Letter from
15 Rogelio Chavez, attached. Like his brother and father, Mr. Baez is a fence builder. PSR ¶ 48. He
16 was employed as a journeyman at Universal Fences in Oakland and was responsible for a crew of
17 six. Exhibit A, Chavez Letter. In working with his team, he showed "great leadership skills and was
18 definitely a team player." The president of the company reports that Mr. Baez "was always very
19 polite and respectful to all of our staff and our customers." *Id.* He also returned because members of
20 his family reside here in the United States. His father, three of his siblings and several cousins all
21 live in the Bay Area. PSR ¶ 48; *see also*, Exhibit A, Letters from Roy Chavez and Brenda Camacho.
22 Mr. Baez's cousin, Roy Chavez, reports that Mr. Baez is "a very humble person" and his "presence"
23 in the family is missed. Exhibit A. Mr. Baez's cousin Brenda Camacho echoes the same sentiment:
24 Mr. Baez "is a loving and caring person. He was "always known in the family as the person who
25 would help others when they needed it." *Id.*
26

- 2 -

Sometime after Mr. Baez returned to the United States, he was arrested. He was at home sleeping on his family couch when officers conducted a probation search there. Officers recovered drugs from a safe in the home where Mr. Baez's brother was also staying. PSR ¶ 6. Mr. Baez took responsibility for the drugs and was then convicted of a new offense, possession of drugs for sale. PSR ¶ 35. He had no prior record of drug sales. PSR ¶¶ 26-34. The state court sentenced Mr. Baez to one year in state custody for this offense. PSR ¶ 35. Unfortunately, Mr. Baez will not get any federal credit for the state time he served. Nevertheless, Mr. Baez does not seek a downward departure to remedy that lost opportunity, although the Ninth Circuit has recognized that such a departure would be appropriate. *See United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998). Nor does he request a fully concurrent sentence for his revocation. Instead, Mr. Baez requests a low-end sentence for the instant offense and an additional six months for the supervised release violation. In the alternative, if the Court decides to sentence Mr. Baez to a longer sentence for his supervised release violation, he requests that any time over six months be ordered to run concurrent to the time given for the instant offense.[1]

The Court has the discretion to sentence Mr. Baez to concurrent time despite the Commission's recommendation in Guideline § 7B1.3(f) that the Court impose consecutive sentences. Even before the Supreme Court changed the landscape of federal sentencing in *Booker*, *Kimbrough* and *Gall*, the revocation guidelines were not binding on the Court. In *United States v. George*, 184 F.3d 1119 (9th Cir. 1999), the Ninth Circuit held that the Sentencing Commission's policy statements in Chapter 7 are advisory. *Id.* at 1121-22 ("Because the Commission has not yet . . . changed its view that the Chapter 7 policy statements are merely advisory, we see no reason to reduce the flexibility of district courts in sentencing supervised release violators."); *see also United States v. Bahe*, 201 F.3d 1124, 1129, n.5 (9th Cir. 2000) ("The Sentencing Commission has yet to

---

[1] Mr. Baez was on supervised release for a Class C felony, and thus the statutory maximum he can receive on a revocation is two years. 18 U.S.C. § 3583(e)(3).

promulgate mandatory guidelines dealing with revocation of probation or supervised release.").

In *United States v. Jackson*, 176 F.3d 1175, 1178 (9th Cir. 1999), the Ninth Circuit explained that upon revocation of multiple terms of supervised release, it is within the district court's discretion to impose either a concurrent or consecutive sentence. *Id*. Courts may consider factors such as the seriousness of the offense, deterrence, protection of the public and the need for education or other treatments. *Id.* (citing sentencing factors listed in 18 U.S.C. § 3553(a)). In Mr. Baez's case, he has a less serious criminal record than most defendants charged with illegal reentry, as is reflected in his base offense level, and he is requesting a punishment (30 months) that is incrementally greater than the last sentence he received for illegal reentry (21 months). This greater punishment is a sufficient deterrent. Moreover, Mr. Baez most likely suffers from an untreated addiction to drugs, as is reflected in his most recent conviction. PSR ¶ 53. While his addiction does not excuse his behavior, it does put much of his criminal history into context.

In deciding upon the appropriate sentence within the agreed-upon range, this Court must not only consider the guidelines, but must also consider the other directives set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). "The overarching statutory charge for a district court is to impose a sentence sufficient, *but not greater than necessary*" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need:

- •   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- •   to afford adequate deterrence to criminal conduct;
- •   to protect the public from further crimes of the defendant; and
- •   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

A sentence of thirty months imprisonment accomplishes the goals of section 3553(a). First, Mr. Baez's significant criminal history is adequately accounted for and substantially raised his guideline range. Additionally, his criminal record places him in criminal history category VI, a category that significantly increases the recommended sentencing range. Thus, the Guidelines have more than adequately considered Mr. Baez's criminal history, and a sentence at the low-end of the guidelines (24 months) for the instant offense is already sufficiently elevated to account for his individual criminal history, including his most recent conviction for which he served a year just prior to his writ into federal custody to face the instant offense.

Moreover, the offense of conviction in this case is illegal re-entry after deportation. While Mr. Baez acknowledges the seriousness of his offense, and admits that he made a terrible mistake in coming back to this country without permission, it is not a violent crime and must be put into context relative to the seriousness of other federal felonies. Indeed, that is precisely what the sentencing guidelines appropriately do in this case. A sentence no higher than the low-end of the guidelines (24 months) appropriately reflects the seriousness of this offense and adequately accounts for his individual offense conduct. An additional six months on top of that will appropriately punish Mr. Baez for returning to this country in violation of his supervised release. No greater amount of time is necessary to achieve the goals of sentencing.

**CONCLUSION**

In full consideration of his history and characteristics, together with the other goals of sentencing, Mr. Baez respectfully requests that the Court sentence him to a total sentence of 30 months imprisonment for both of his pending cases – a sentence which comports with the plea agreement and is sufficient but not greater than necessary to meet the Court's sentencing objectives.

Dated: June 18, 2008

                                   Respectfully submitted,

                                   BARRY J. PORTMAN
                                   Federal Public Defender
                                              /S/

                                   ANGELA M. HANSEN
                                   Assistant Federal Public Defender

# Exhibit A

To Whom It May Concern:

Salvador Baez is my cousin. We grew up together and he has to be one of the best people I know. He is a very humble person and I miss his presence in our family. He has become a person who I can confide in and a family member I truly miss. He is a great natured person and a life long friend.

If you have any questions, please give me a call at 510-714-5188

Regards,


Roy Chavez



Corporate Office: 421 Pendleton Way. Oakland, CA 94545
PH: 510) 569-3400    FAX: 510) 569-3443

Cont. Lic. # 833104
www.universalfences.com

June 5, 2008

To Whom It May Concern:

Salvador Baez Espinoza was employed as a journeyman from January until October 2007. During that time he was responsible for a crew of 6 and showed great leadership skills and was definitely a team player. He was always very polite and respectful to all of our staff and our customers. His work required him to enter properties and have direct contact with our customers; we never had any problems with his performance. We would receive periodic calls from the customers complimenting him on his commitment to his work and the ability he had to get the job done with a smile. Salvador was a pleasure to have around and we would definitely re-hire him if the opportunity presented itself.

If you have any questions, or if we can be of further assistance; please do not hesitate to give me a call.

Sincerely,

Rogelio Chavez
President

To Whom It May Concern:

Please accept this letter as my contribution to having you get to know Salvador Baez the person. Salvador or as we call him Chava is my first cousin from my mother's side. I have known Chava his whole life. He is a humble person and a great friend. He is known in our family as the person who would help others when they needed it. He is a great uncle to his nieces and nephews and a great son. He loves his family and we love him, we would like for you to consider his release back to us so that we may complete our family circle once again. Chava is a loving and caring person and I would personally vouch for that because I have seen it and felt it first hand. I would like to say that Chava and I have grown up together and I miss his presence and the love he brings to our family.

Please contact me at 510-714-4700 if I can be of any assistance.

Regards,

Brenda Camacho